In the Matter of NICHOLAS CAVETTI et al., Appellants, v KRISTIN PROUD, as Commissioner of the Office of Temporary and Disability Assistance of the New York State Department of Family Assistance, Respondent. [34 NYS3d 84]—

In a hybrid proceeding pursuant to CPLR article 78 to review determinations of the Office of Temporary and Disability Assistance of the New York State Department of Family Assistance effective April 1, 2011, October 1, 2011 and October 1, 2012, respectively, adjusting the standard utility allowances applicable to the Supplemental Nutrition Assistance Program, and class action, inter alia, pursuant to 42 USC § 1983 for declaratory and injunctive relief, the petitioners/plaintiffs appeal from an order and judgment (one paper) of the Supreme Court, Nassau County (Iannacci, J.), entered May 29, 2014,

which denied their motion for summary judgment on so much of the petition/complaint as sought declaratory and injunctive relief, granted the respondent/defendant's motion for summary judgment, inter alia, dismissing the petition/complaint, and dismissed the hybrid proceeding and action and declared that the Office of Temporary and Disability Assistance of the New York State Department of Family Assistance acted reasonably in adjusting the standard utility allowances.

Ordered that the order and judgment is affirmed, with costs.

In this hybrid proceeding pursuant to CPLR article 78 and class action, the petitioners/plaintiffs challenge the implementation by the Office of Temporary and Disability Assistance of the New York State Department of Family Assistance (hereinafter the OTDA) of certain standardized deductions used to calculate benefits under the Supplemental Nutrition Assistance Program (hereinafter SNAP). As relevant here, federal regulations governing the SNAP program authorize the OTDA to establish Standard Utility Allowances (hereinafter SUAs) that are used in calculating the excess shelter expense deduction that is used in calculating a household's income and the monthly SNAP benefits to which a recipient household is entitled (see 7 USC § 2014 [e] [6] [C] [i]; 18 NYCRR 387.12).

In early 2011, the OTDA established new amounts for the SUAs which were lower than the prior amounts and generally resulted in a slight reduction of SNAP benefits paid. Effective April 1, 2011, the OTDA amended applicable regulations to set forth the adjusted SUA amounts; prior to that time, the regulations had not incorporated specific dollar amounts for the SUAs (see former 18 NYCRR 387.12). In connection with the early 2011 adjustment, the OTDA developed a new formula used to calculate SUAs. In this proceeding, the OTDA submitted evidence showing that if it had continued to use the prior formula, a more significant decrease in SNAP benefits would have resulted.

Effective October 1, 2011, the OTDA again adjusted and began using new SUA amounts to determine the SNAP benefits to which households were entitled. The OTDA did not establish those new amounts by amending the applicable regulations. The October 2011 adjustment to the SUAs increased the amounts of the SUAs, resulting in an overall corresponding increase in SNAP benefits.

Effective October 1, 2012, in response to a federal mandate to develop new SUA amounts, the OTDA further amended the applicable regulations with respect to the dollar amounts of the SUAs (see 18 NYCRR 387.12).

The petitioners/plaintiffs live in New York and receive SNAP benefits. They commenced this hybrid proceeding and class action seeking, inter alia, a judgment declaring that the adjustments to the SUAs established in April 2011, October 2011 and October 2012, were arbitrary and irrational, and not enacted in accordance with lawful procedure.

Contrary to the assertion of the OTDA, the petitioners/plaintiffs do not lack standing to bring this proceeding and action (*see Matter of Village of Chestnut Ridge v Town of Ramapo*, 45 AD3d 74, 86-88 [2007]; *Matter of Ziemba v City of Troy*, 37 AD3d 68, 71 [2006]).

However, in support of its motion for summary judgment, inter alia, dismissing the petition/complaint, the OTDA established, prima facie, that there was a rational basis for the changes to the subject regulations and policies, and the petitioners/plaintiffs raised no triable issues of fact in opposition to that showing. In a CPLR article 78 proceeding challenging an administrative action, a court must examine whether the action taken by the agency has a rational basis (*see Matter of Wooley v New York State Dept. of Correctional Servs.*, 15 NY3d 275, 280 [2010]; *Matter of Peckham v Calogero*, 12 NY3d 424, 431 [2009]). If a court concludes that an administrative determination is supported by a rational basis, it "must sustain the determination even if the court concludes that it would have reached a different result than the one reached by the agency" (*Matter of Peckham v Calogero*, 12 NY3d at 431, citing *Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County*, 34 NY2d 222, 231 [1974]). With respect to challenges to regulations, as here, "[the] [c]ourt should uphold a regulation if it has a rational basis and is not unreasonable, arbitrary or capricious" (*Matter of Ford v New York State Racing & Wagering Bd.*, 107 AD3d 1071, 1073 [2013], *affd* 24 NY3d 488 [2014]; *see Kuppersmith v Dowling*, 93 NY2d 90, 96 [1999]).

The petitioners/plaintiffs contend that, in calculating the SUAs in 2011-2012, the OTDA erred in using a certain figure to represent the cost of water service, sewage service, and trash collection. The OTDA demonstrated, prima facie, that there was a rational basis for using that figure in light of, inter alia, evidence showing that the figure exceeded the average cost of such services nationally and in "central city urban areas" during the relevant time period. In opposition, the petitioners/plaintiffs failed to raise a triable issue of fact as to whether the OTDA's action was " 'so lacking in reason . . . that it is essentially arbitrary' " (*Kuppersmith v Dowling*, 93 NY2d at 96,

quoting *Matter of Marburg v Cole*, 286 NY 202, 212 [1941]). Therefore, the Supreme Court properly determined that the record showed, as a matter of law, that the OTDA's actions were not unreasonable, arbitrary and capricious, or irrational (*see Matter of Roberts v Gavin*, 96 AD3d 669, 672 [2012]; *Matter of Sullivan Fin. Group, Inc. v Wrynn*, 94 AD3d 90, 97-98 [2012]).

The OTDA also demonstrated, as a matter of law, that the subject actions were not taken in violation of article IV, § 8 of the NY Constitution or in violation of the State Administrative Procedure Act. Article IV, § 8 of the NY Constitution and State Administrative Procedure Act § 102 mandate rulemaking procedures applicable to certain rules promulgated by an administrative agency. As relevant here, State Administrative Procedure Act § 102 (2) (a) defines a "rule," for which State Administrative Procedure Act rulemaking procedures apply, as "(i) the whole or part of each agency statement, regulation or code of general applicability that implements or applies law, or prescribes a fee charged by or paid to any agency or the procedure or practice requirements of any agency, including the amendment, suspension or repeal thereof and (ii) the amendment, suspension, repeal, approval, or prescription for the future of rates, wages, security authorizations, corporate or financial structures or reorganization thereof, prices, facilities, appliances, services or allowances therefor or of valuations, costs or accounting, or practices bearing on any of the foregoing whether of general or particular applicability."

The rulemaking procedures mandated by article IV, § 8 of the NY Constitution and the State Administrative Procedure Act apply only to the promulgation of a "fixed, general principle to be applied by an administrative agency without regard to other facts and circumstances relevant to the regulatory scheme of the statute it administers" (*Matter of New York City Tr. Auth. v New York State Dept. of Labor*, 88 NY2d 225, 229 [1996] [internal quotation marks omitted]). Here, the applicable federal regulations direct states to update the SUA amounts annually in light of, inter alia, changing utility costs (7 CFR 273.9 [d] [6]). The OTDA is authorized to administer the SNAP program, as per the Social Services Law (*see* Social Services Law §§ 20 [3] [d]; 29, 95). The subject regulations set forth the several categories of SUAs, and the various expenses that are covered in each SUA category (*see* 18 NYCRR 387.12). As the SUA amounts do not constitute a "fixed, general principle," the OTDA is not required to follow the rulemaking procedures of State Administrative Procedure Act article 2 and

article IV, § 8 of the NY Constitution, in making annual adjustments to the amounts used to implement the SUAs for purposes of the SNAP program (*see Matter of Organization to Assure Servs. for Exceptional Students v Ambach*, 56 NY2d 518, 521 [1982]; *Matter of Hudson Val. Nursing Ctr. v Axelrod*, 130 AD2d 862, 866 [1987]; *Matter of Eden Park Health Servs. v Axelrod*, 114 AD2d 721, 722-723 [1985]). Consequently, the OTDA established, as a matter of law, that it did not violate lawful rulemaking procedures in making the subject adjustments to the SUAs (*see* NY Const, art IV, § 8; State Administrative Procedure Act art 2).

The petitioners/plaintiffs' remaining contention is without merit. Hall, J.P., Cohen, LaSalle and Connolly, JJ., concur.